Petitioner would like to reserve two minutes for rebuttal. I'm sorry. Petitioner would like to reserve two minutes for rebuttal. Yes, that's fine. May it please the Court, my name is Parmjeet Randhawa. I represent Petitioner Cheon So in his petition for review for due process violations in the discretionary denial of his 212C application. As the Board of Immigration Appeals summarily affirmed, this Court reviews de novo the IJ's decision. Mr. So submits the IJ abused discretion when he improperly and erroneously considered facts, he failed to consider all favorable and unfavorable factors, and he failed to take into account both negative and positive circumstances involving those factors. Well, what level of review do we have? You're talking about discretionary relief now, and usually we don't review discretionary relief. So what authority do we have to review it? We're reviewing for a violation of law, for questions of law that are reviewed de novo. We're arguing that the IJ abused discretion in violation of law. He did acts that were contrary to both BIA precedent and statutory regulations. Beyond reliance on – I understand the point about reliance on nonconvicted arrests, but do we have authority over anything else? You do if you find that the actions were contrary to BIA precedent. And BIA precedent is found regularly to require consideration of all favorable and unfavorable factors, and it requires consideration of both negative and positive circumstances involving those factors. Counsel, after our decision in the BB2, are you even – is your client even entitled to 212C relief? We find that he is. He was found eligible by the IJ judge, and after decisions in both Blake and Brieva, the BIA summarily affirmed the IJ's findings. If this Court feels that under a BB, the applicant may not be suitable for – eligible for 212C application, we invite the Court to remand for an eligibility determining eligibility for 212C standalone, and to pursue other reliefs that the applicant forewent, relying on the IJ's finding of eligibility. Well, a BB2 was 2009. The IJ's decision was in 2005. How could he have found that you were eligible under a BB? A BB stipulates that there was no change in law. It actually noted that this – Well, we overruled prior decisions. I don't know why that wouldn't be a change in the law. But the BIA's approach to 212C remained consistent. There wasn't a change in the way the BIA reviewed eligibility for 212C. The counterpart requirement existed well before a BB and continues to exist. And do you have a counterpart? We do. He has eligibility for adjustment of status with a U.S. citizen wife. The judge found eligibility for standalone 212C applications, and so he forewent the adjustment of status, as well as other forms of relief, including – But that's not a counterpart. That's just a different form of relief, right? Well, adjustment of status with a counterpart of 212C to address both issues of admissibility and issues of removability. Because his wife is a U.S. citizen, that would make him eligible to be – that makes him admissible? It would make him eligible to apply for adjustment of status with a 212C application. And why – I didn't understand that part. Why is – this may be a point of immigration I don't know, but why is he better off – you seem to be suggesting that he could be eligible for adjustment of status to a 212C release even if he isn't eligible under Blake and a BB2 for a standalone? Because that's what – sorry, Your Honor. That's what the BIA has held. And that's what statute allows for, that he can file a concurrent 212C application with his adjustment of status application in order to address both admissibility and removability. Well, I don't really understand it, but that's okay. It – I think the way the government is trying to tie in the 212C eligibility issue is saying that even if there was a due process violation, which is ultimately what you're relying on here, there was no prejudice because he wasn't eligible in the first place. However, the BIA has found in a precedent decision of Rodarte Espinosa that the fact that the respondent was seeking a concurrent application of 212C and adjustment of status even after he was denied on discretion of 212C alone, he's still eligible to – they remanded the case back to the IA – back to the IJ to allow for pursuit of – So you're saying his prejudice – but that doesn't get you 212C relief. It just gets you a remand. No. 212C relief would have to be first reviewed on proper discretionary grounds by the agency. I understand. But what I'm saying is my understanding is that the argument about why you can't get what I understand you to be primarily asking for in this case, which is 212C relief because they denied it discretionarily on unconstitutional grounds, is that even if they did deny it discretionarily on unconstitutional grounds, you're not eligible for 212C stand-alone relief, which is all you've ever applied for. Now, I understand that you have a backup argument, which is, but we should at least get a remand to see if there's something else we're eligible for. But what about the first argument without the backup? Well, we don't concede that he's not eligible for stand-alone 212C. This Court has found that a crime of sexual assault is a crime of inadmissibility, and in which case there's inadmissibility and removability, and he would be eligible for 212C relief as a stand-alone. But even if the BIA were to say that his conviction is not a ground of inadmissibility, having prior finding that there was eligibility, he should be allowed to pursue relief that he forewent relying on the judge's finding of eligibility. Well, if he wasn't eligible, what did he forego? Well, he was eligible for adjustment of status with the 212C relief, which, under matter of Blake, he would have qualified for. He was also eligible for withholding of removal or protection under the Convention of CAT, which he asserted and then withdrew relying on the 212C's eligibility finding. What's the timing of this? I mean, as of when would he have been eligible for adjustment of status? His wife is currently a U.S. citizen. Currently. But in terms of this very long history of this case, which has gone on forever, at the time of the original BIA decision, would he have been eligible? His wife had been a lawful permanent resident for over 30 years, and he had other relief in the form of protection under CAT. If he was found not to be eligible for 212C stand-alone, we would have pursued protection under CAT and withholding of removal, and we would have pursued his wife obtaining a citizenship. Citizenship application typically takes about five months. She would have received her citizenship before he would have lapsed in time and he would have moved to reopen for additional relief. Your time is going quickly, and I know that I started the diversion here. Where did the I.J. go wrong? Well, the I.J. considered he abused his discretion when he relied on improper and erroneous facts. Now, you keep saying abusing his discretion. If he abuses discretion, then I don't see how we get to review that for law. So it seems to me you've confused your standards of review. He acted contrary to law. Okay. Where did he act contrary to law? Can you point out the page? When he relied on improper and erroneous facts. The police report was an improper fact. The Board has held in an en banc precedent decision. Which page of the I.J.'s decision are you referring to? He, on page of the record, page 74. I'm sorry, page 69 and 76. On 69, he's just reciting, right, everything that happened, everything that was said. So the real question is to what degree my understanding of the precedent is not that you can't rely on it at all, but you can't rely on it much, or very little, or not dispositively. Something in that range. So in this dispositive paragraph here on page 76, how would you say that he was doing that? Well, he specifically states that he will rely on these, on the. Okay. Where? Which line is on page 76? It's towards the top of the page. Okay. And he explicitly says he will rely on the report, stating that since no convictions resulted from the domestic violence, the Court will consider the arrest reports, the nature of the offense, and the testimony of all witnesses in evaluating whether a favorable exercise of discretion should be granted. I don't see that sentence. I don't see that on page 76 either. What page of the I.J.'s decision is it? It should be numbered down at the bottom, aside from the ER. I don't see that. And Judge Berzon did see that on AR 76. Okay. On page 69, he indicates that he will rely on these police reports. Well, he, and where did he rely on them? The only place I can find on page 76 is that he says that the Respondent has used drugs. So he used the fact of use of drugs, which your client testified to, did not at all dispute. I don't see that he's really relying on the fact of conviction. He's really relying on the fact that he used drugs as an additional circumstance as part of the weighing process. Well, in his evaluation of the Respondent's drug use, he relied on erroneous facts. He claimed that the Respondent had used drugs from 2000 to 2001, that all of his drug use was at work, and that he was lucky that he received a plea bargain. And those are wrong? Those are wrong. Now, I read the testimony this morning, and he said that he got the meth at work. No, actually. On page 169 of the record, he testifies that he did not use drugs at work. No, I didn't say he used the drugs at work. I said he got the drugs at work. Right. But the judge says he used. All of his drug use was at work. Where did the judge say that? On page 72. Okay. And that's significant? It is significant because it establishes a pattern of erroneous facts regarding the drug use. You know, I hope you're right about being able to get to these kinds of issues on a discretionary review. But usually we haven't. I mean, in my view, we should be able to. But in general, we really sort of regard that as part of the fact-finding, not as a separate legal issue. Do you have any precedent of this Court which has gone in this degree of detail to add the fact findings as opposed to the arrest issue? That seems to me to be a separate legal issue. But other than that, is there any precedent in any area of immigration discretionary review where we've done this? Well, the I.J. has no discretion to rely on improper, erroneous facts. That sounds perfectly logical to me, but I don't think it's what we've been doing. He made up facts, and he got facts wrong. I ask you specifically, do you have any precedent for looking at the discretionary line between law and discretion in this way? Well, you would review whether he acted legally de novo and to find if there are substantial facts to support his actions. You're very much over time. We'll give you a couple minutes in rebuttal since we slightly hijacked your argument. Thank you. Thank you, Your Honor. Good morning, Your Honors. I'm Erika Miles for the Office of Immigration Litigation and the Attorney General in this matter. Maybe you could address the Abebe question. Sure. Is so eligible for 212C relief or not? Under this Court's decision in Abebe, he is not eligible. Under this Court's decision in Aguilar-Ramos v. Holder decided in 2010 where this Court, excuse me, applied the statutory counterpart rule that the Board applies, he is not eligible. And the Board was not able to apply this rule.  And if you go to the case file in the case file in Aguilar-Ramos, they have this. But there is a Supreme Court case now that's been ranked on this. Yes, July. And so if we were going to get to this, we'd probably have to sit and just sit on the case. That is true. However, if you want to take this case on and view it from the question that's been presented here, even though he's not eligible at the end of the day right now as the law stands. At the time, he was given a full and fair hearing on the discretionary eligibility aspect for 212C. The immigration judge laid out the applicable law, matter of Marin, matter of Buscemi, matter of Edwards, talked about how you must weigh the positive and the negative equities. There must be unusual and outstanding equities. And if there is a particularly serious-natured offense, then those equities that I just talked about don't necessarily mean that a discretionary grant will apply. The immigration judge is left to the discretion to weigh the public safety element against the positive equities. And here, the immigration judge gave a very thorough decision, talking about all of the positive equities, his family ties, that he's been here since he was young, those types of things, and then also discussed the very violent, enforceable, and upsetting nature of the offense, the conviction on which he's found removable, as well as the fact that he's had a subsequent conviction, a failure to register as a sex offender more recently in 2003, and then also addressing opposing counsel's point of view about the consideration of other negative factors, such as his drug history and the possibility of domestic violence based on police reports that were submitted. The immigration judge looked to those police reports, looked to the information in there, and then questioned Mr. Tso, questioned Mr. Tso's wife, and he laid it out in his decision that he considered the information they provided, their version of events, that they were able to discuss, disclaim, explain what happened at all of those occurrences when the police arrived. He admitted to drug use. They talked about the potential for domestic violence and her history. There's nothing here that shows that the immigration judge violated the law, and that's all this Court may look to as to this question. Did the immigration judge apply the wrong legal standard? No, he did not. He did not. I mean, it seems like the only thing that he – as to the drugs, he seems to have just said he used drugs. He doesn't rely on the arrestor in any way. But on – as to the domestic violence, he has to be relying on the – at least the fact that the police were called, even though there was never a prosecution or conviction. He doesn't rely on it so much as looks to it and questioned both Mr. Tso and his wife. I'm talking about the summary paragraph on page 24 of the IJ report. Sure. Where he says that the respondent has used drugs and that he admitted to. He's been involved in incidents where the police had to be called to his home for domestic violence issues, which were either caused by him or to which he left his wife to fend for herself. And I gather, as to the second piece, that's one of the issues that they claim that he was wrong about because he – I mean, the reason he left her was because she said she was going to commit suicide if he had stayed there. At least there's some testimony to that effect. Yeah. Well, he testified as well as she testified. And so the immigration judge here is just, after a lengthy decision on this very final page, just basically re-summarizing everything that he considered. But there is a lengthy summarization throughout that he considered her describing slapping herself, using a phone cord around her neck, and him not intervening or not doing anything about it, her doing this in front of the children. And the immigration judge reflects that he considered all of that information. So, again, this is now – this discussion here is going more toward, you know, an unreviewable discretionary determination, the weighing of the factors. And it really shouldn't because we have – we have the immigration judge's decision here that clearly articulates the proper law that was to be applied and that it was applied. And that's the only thing this Court can look to is whether or not the immigration judge applied the proper law, and he did. And so this Court's inquiry should really end there as to the discretionary denial. As to these other claims, I just wanted to quickly address her claims about the possibility of remand for other forms of relief. Just to make clear, all of those forms of relief that she's talking about right now were available for Mr. Tso to apply for at the time before the immigration judge and also before the board. The cases – all of the cases on which she's relying were decided by the board in 2005 or earlier. If Mr. Tso has a cat claim, is it too late for him to raise it? Yes, he waived it. He had the ability to apply before the immigration judge. And at that time, you're – the applicant is supposed to apply for all forms of relief, whether or not as the lead or alternative forms. If he thought that there was something – if there was something new, some kind of new development in China that would implicate his rights under the Convention against Torture, would that – would he have to reopen or what does he have to do? He would need to file a motion to reopen with the board. That is not at issue before this Court. Remand is not appropriate for any issue that was not adjudicated and already visited by the agency below. And just this question of adjustment of status along with 212C, again, he had the opportunity to raise it at the time his appeal was pending with the board. He hadn't even filed his appellate brief with the board when these decisions came out, decisions saying he's not eligible for 212C, a decision saying that there's a possibility of adjustment of status plus 212C. Those four decisions were decided before he even filed his appeal. And the agency takes a position before the BIA that he wasn't eligible? Yes. The Homeland Security filed its brief asking for summary affirmance of the immigration judge's decision and also saying that he is not eligible because matter of Blake had been decided clarifying that 212C was not, was not a possibility for Mr. So. But the BIA didn't take that rap. Well, the BIA affirmed without opinion, which means it stated no position on the issue. So. So it therefore left the, I mean, our law in that circumstance is we review the I.J.'s opinion. That you review the I.J.'s decision.  But that wasn't the basis for the decision that we're reviewing at this point. That was not the basis at the time, no. Under our jurisprudence, though, we can only affirm on the basis on which the BIA decided it and the BIA decided it on the basis on which the I.J. decided it. So we're, then we really can't consider the 212 basis, can we? No, it's a discretionary denial in this court. No, no, I mean that your claim that we have 212. That he's not eligible. Ineligible, the BIA did not rule on that. That's true. The board did not officially rule on it. But in affirming without opinion, the board is affirming the outcome of the denial. The government concedes, though, that the outcome of Judelang could affect our decision on the BB-2. It could affect your decision on the BB-2, yes. So here's my question. I don't see why under any circumstances the eligibility issue comes in here. Because the BIA had every opportunity to decide on that basis. It didn't. And we're reviewing what it did. So whichever way we decide it, it seems to me the 212C eligibility issue just seems off the table here. This Court could decide this. I'm not saying could. I'm saying has to. I'm saying that we have to. That it would be inappropriate for us to, even on a remand basis or any other, consider the 212C eligibility question. Well, if this case were to go, if you were to send it back, for example, to the board, the board at this stage of the game has no ability to grant 212C. Well, why would we send it back? If we thought that she was right about the discretionary issue, then we would grant the petition and not remand it. There would be nothing to remand it. This Court doesn't have the authority to grant 212C, and it can't review the discretionary. It can only review whether or not the agency applied the law. Well, but we can. You say that we can review it to the degree of legal error. So if we review it to the degree of legal error, we decide there's legal error, we grant the petition like any other. There's nothing to remand. Well, what would be remanded then is for the board to have the remand further to the immigration judge to apply the correct law if you determine that the immigration judge did not apply the correct law. To apply the correct law, it's still discretionary relief. Do you think at that point the BIA could then start relying on ineligibility, even though it never did and could have? Well, at that point, the board, the position is they never were eligible in the first place. So technically, the immigration judge erred in even determining that he was eligible. Maybe, but the board had every opportunity to sell rule and never did. Why isn't it just foreclosed at that point? Because there's no – at the time, there was no precedent, but the board did decide, did issue precedent. But what's the time of the BIA there was? The board would have the authority to apply its legal position on the availability of 212C to this individual on remand, because that is the legal position of the eligibility in general, of the – its interpretation of the statute and what its interpretation always has been. Thank you for your time. Thank you very much. I won't give you two minutes to rebuttal. That's what you asked for originally. Thank you, Your Honors. The – Well, it's supposed to be at two minutes. Can you put it at two minutes, please? Thank you. Okay. Go ahead. The I.J. acted contrary to law when he – he inappropriately considered the police reports. He acted contrary to law when he relied on false counsel. Did he just consider the police report, or did he consider other facts and circumstances? No, he did not consider other facts and circumstances. Even if he – I thought he heard testimony of witnesses about what happened. He did, and in his evaluation of the facts, he failed to consider circumstances involving these domestic violence reports. Well, okay, but you've just told me he did consider other circumstances, but now you're challenging the conclusions he reached about the other circumstances. But he didn't rely solely and only on the police report, did he? He did, because he asserts that there was domestic violence. If he agrees that there was perhaps the – that Mr. Soe left his wife in a state of distress, as opposed to causing domestic violence, he fails to look at circumstances that could relate to that act, that the wife had created unsubstantiated reports in the past, and he had just been granted into the diversion program, and he had to stay out of trouble. He had a son, and he had parents who relied on him. Isn't that part of his weighing of the facts and determining what really happened, based upon the different versions of folks who were there? The point is he didn't weigh those facts. Contrary to law, he did not take into consideration all the positive and negative circumstances involving that factor. Well, you can't tell that. All you can say – he wrote down all the positive and negative circumstances, right? Not regarding these domestic violence reports. He didn't repeat – I thought he did go through what everybody said about them. And then at the end he chose to rely on them, which could be understood to mean that he resolved the facts in one way rather than another way. In his statement of – in his weighing of the facts, after he describes all the positive equities, he relies on three factors for negative factors in this decision. Drugs, domestic violence, and the failure to register. His evaluation of the drugs is riddled with erroneous facts. He mistakes facts, he makes up facts. There was no plea bargain, there was no evidence of a plea bargain, and yet he states that Soe was lucky to have received a plea bargain regarding the second drug offense. There's no indication of any plea bargain. He says he used drugs only at work, whereas Soe says he did not use drugs at work. He indicates a use of 2000 to 2001. Soe testified he used for two to three months in 2001. The erroneous or made-up facts cannot support a finding. He only referred to three negative factors, domestic violence, drugs, and failure to register. And the basic crime. He actually does not list the basic crime as a negative factor. He notes genuine rehabilitation and the fact that it's 14 years old. All right. Thank you very much. Thank you both for an unusually good argument in an immigration case. Thank you very much. Thank you. Okay. The case of Sell v. Holder is submitted.
judges: Graham, Berzon, Bybee